Mr. Yamamoto, we're happy to hear from you in United States v. Stone. May it please the court, Alan Yamamoto for Charise Stone, the appellant. This is a case in the United States v. Stone, where a successful scheme was made a lot of money. What she did was she would go to people who were either beginning their foreclosure process or unable to pay the mortgage. She would then go to the lenders, negotiate a short sale price. At the same time, looking for buyers to sell the property for a profit. She bought the property. Correct. She sold it for more than the short sale price. She kept the profit. And the issue is whether or not the lenders are entitled. She took commissions. She took taxes. She took, in one instance, there was a second mortgage that she added on of $250,000, and she took that. She took money left and right. In some instances, she took the realtor's commissions. So the issue here is whether or not the lenders are owed. Well, she lied to the lenders as to the personal financial circumstances of the homeowners. Correct. In order so that the lenders would pay a reduced price because they didn't think that the loan was going to perform. Not necessarily. What she did was she made up hardship stories so the lenders would negotiate the short sales. Now, in a couple of instances, the lenders themselves conducted appraisals of the properties. So they knew what the market values were. In two instances, the lenders rejected Stone's offer of the short sale price and negotiated a higher price. But it wasn't just the market value of the properties that was at issue here. It was also the personal circumstances of the loan to perform and the homeowner's ability to make a monthly payment. And she painted them to the lender as in dire straits. And they were really unable to make their monthly payments. So the lenders saying, well, I better get what I can out of this. That was all untrue. At least in one instance, that's correct. In three instances, the homeowners had lost their jobs and they were making their mortgage payments either making the entire amount or some portion of the amount. But that wasn't going to go on. So in those instances, and I don't disagree with the court, she lied. There's no question that she lied. You're not challenging any of her convictions? No, Your Honor. And there's what, 13 counts? 13 counts. You're not challenging any of them? You're here challenging... Just the restitution issue, Your Honor. The restitution. That's correct. And the judge ordered a, what, $2.3 million restitution? Judge ordered $2.3 million. Did you represent her? In the lower court? In a matter of speaking, yes, Your Honor. In a matter of speaking? I was her third attorney. You were the third attorney? And the court wasn't going to let me out of the case. You've been involved in a lot of criminal proceedings, though, in Northern Virginia. You've been around there a long time. Yes, Your Honor. I'm afraid so. Lucky to have you. Thank you, Your Honor. It's never a good feeling when you come in and you know they've already replaced two. Well, I'm not sure why we're here today, but... I don't, I really... But you didn't challenge, or she didn't challenge the restitution. Well, we conceded that in the reply, Your Honor, that we did not, but the... So we're here on plain error. Probably. In page 946, you'll find that she did object to the entry of the restitution. You say it should be $800,000 rather than $2.3 million. Correct. Given you the benefit of that objection. If, whether it's plain error or clear, I'm not sure that it's going to make much of a difference, but... Well, the guidelines say it's either actual or intended loss. For a loss. In the statute, you don't... The victim basically, I mean, the defrauding party doesn't get a break. Correct. It's interpreted as to what the loss was to the victim of the particular crime. So there's no doubt that the actual loss, whether or not it's a cognizable loss, but the actual loss to the lender would be the difference between what they got paid and what they were owed, what the deficiency was there. So certainly you can see a case where you could come in and put on appraisers to give evidence of what the value of the property was to counteract what the actual loss was to the lender. We don't have any of that here. Correct, Your Honor. And the case law is problematic for us. What our position would be is that the lender's negotiation and willingness to do the short sale took it from what they were owed by the homeowners to whatever profits that Stone would make. I can't find any analogies for that proposition and I can't find any case law to support it at this point. It's hard for me to get over the fact that the pre-sentence report plainly recommended $2.3 million in restitution. Normally, if you want to put something into play, you have to object to what the pre-sentence report does. That's just basic fairness in terms of giving the other party and the district court a chance to resolve the issue when it's joined. I didn't see that. I know you had a question about the amount of loss,  is not the same thing at all as an objection to the amount of restitution. Those are different things. I can't see that there's a plain error here when the restitution is calculated in a mortgage fraud case by subtracting the short sale price or the foreclosure proceeds, either one, from the unpaid loan balance, which is what the district court did. How is that error much less plain error? That would certainly be the loss for guideline purposes. The issue we're raising would be the loss for restitution purposes, which we contend would be different. You're not complaining about her sentence? No. Actually, the sentence was under what the guidelines would be if you get the benefit of the reduced loss. Correct. It would have you in a range above the sentence. Correct, Your Honor. It is just isolated to the restitution. Yes, Your Honor. The court rejected my loss argument and implicit in that was really the restitution argument. Why didn't you make a better record on that recusal argument? Because I didn't have anything to work with at the time. We subsequently got, through FOIA, information related to the court's finances, but during the time of the trial and time of the case down below, we had no information other than the fact that the court acknowledged that it owned some properties, excuse me, some stock related to the lenders. You're saying now that through FOIA, the judge had stock in three of the banks? Yes, Your Honor. How do you get around, given you the benefit of that fact how do you get around the Sellers case that the government cites from the 4th Circuit back in 1979? I can't. You can't get around it. You can say that Judge Buster was right, Judge Widener and Judge Field were wrong. I guess you could say that. I could. But he didn't have the votes. That's not the case law here. You know, I have to say, you're a fine attorney, and one of the things I appreciate is your honesty. I really did. I'm making that in all genuineness. But the difficulty is, on the recusal point, he didn't hold stock in any of the parties, obviously. He didn't hold stock in Stone or whatever. And the number of shareholders, I mean, the banks, they're corporate entities with huge, huge assets, and any individual shareholding is minuscule in terms of the overall number of investors and in terms of the bank's overall assets. And if one of the banks was a party, that would be a totally different thing, because the de minimis standard wouldn't apply there. If you hold shares in a party, you're accused. But a lot of times, you don't... I just don't see how holding a number of shares in a corporation of this size... Now, maybe if it was a closed corporation, and even if the defendant was not on the board or something, but maybe if there were a very limited number of investors, and holding some shares really meant something, then that would be a different case. But when we're talking about Wells Fargo and banks of comparable size, that seems to me different, just altogether different, not just in degree, but in kind, from a closely held company. I don't disagree, Your Honor. The issue... The financial interest is de minimis. The question is appearance more than anything else, it seems. In this situation... That's what the statute gets at. Yes, Your Honor. It gives a discretion. There is a discretionary call, but it's a question of whether there's an appearance. To the person... To the reasonable person on the street. Isn't that what the test is? Yes, Your Honor. In this case, if the only stock that he owned was in those institutions, we might have a better argument. But he owned stock and mutual funds in a number of different entities. So, these three institutions were one of probably 20 or 30 pieces of assets that he owned stock in. So, it makes our argument much more difficult. Thank you, sir. Thank you, Your Honor. May it please the Court, Alyssa Hart-Mahan for the United States. It appears the Court is familiar with the record in this case, but I just want to highlight a few facts that I think are significant. The first is that the record makes clear that the transactions that the defendant negotiated were permeated with fraud at every stage. Not only was she misrepresenting the market value of these properties, or the sales price of these properties, to the banks, she was exaggerating the homeowner's financial distress, she was concealing her role as purchaser and realtor, and the record makes... I don't think opposing counsel has any contest with that. This whole issue deals with the question of restitution and forfeiture. Correct. And I guess I would also point out that the case law regarding restitution and mortgage fraud cases makes clear that you start with the outstanding balance of the loan, and you subtract the money recovered from the sale of the collateral or the short sale. I think the Supreme Court's opinion in Robers makes that clear. Even though the value of the collateral may vary, the starting point is the outstanding balance on the loan. That's what the district court did here. That was a proper and reasonable estimate of the loss to the victims, and certainly didn't constitute clear or plain error. What about the amount of loss and on the restitution? These restitution awards are one of the chief means that Congress saw in getting at this kind of fraud. It doesn't mean much in a bank robbery case, or in an armed robbery case or something, where you give a victim back $40 or $50, but it's a big part of the penalty here. And the thing is, these cases come up. This one comes up to us on plain error review because there was no objection to PSR. And then the amount of loss comes up on a clear error review. So the standard of review just weighs, whether it's the amount of loss or the restitution, the standard of review just weighs heavily in terms of what the district court did. I don't know if the district court really made an error at all. We argue that the district court's calculations were proper. There was no error, let alone plain error. If the court has no more questions on the restitution. What do you got to say about the recusal? On the recusal issue, this court's decision in Sellers makes clear that recusal is not necessarily required when the judge... But you gave them down the road for not making a record, which was pretty hard to make. They got to make a FOIA request. And the statute says, under all the circumstances. Correct. Somebody needs to know what the circumstances are. And the government didn't want to help out by getting the circumstances. They felt like they had some kind of obligation to get the record so that we know what's going on in a situation like that. Well, in our response... Because the statute specifically says all the circumstances. And what are they? And you say, well they can't prove it because they didn't have it at the time. They had to go make a FOIA request to find the judge's financial statement.  got some kind of obligation here too. Well, at the time that the defendant made her recusal motion in the trial court, I don't think anybody knew anything about the court's financial holdings. And in our responsive brief, we pointed out there were a couple of different ways in which the defendant could bring the form that she got through the FOIA request to the district court detention. That form was not in the record. And I believe it's still not in the record. You cited Rule 10A, which is what the record is. Rule 10A permits you to supplement the record with appropriate stuff. Rule 10E, I mean. 10E, subpart E, talks about supplementing the record if something's pertinent. And all the circumstances, I think, make some of that stuff pertinent. Correct. And I don't know that we would oppose a motion to supplement the record, but there was no motion to supplement the record. And we didn't object to the appeal. I mean, I think the procedure that the court followed... You did object. You said it's been waived. Well, we said it was waived. You said they can't raise it. Well, we said they need to go back to the district court and raise it before the district court first, which is what happened here. The appeal was held in abeyance while the district court decided the new trial motion that was filed in the district court. And we suggested in our responsive brief that that was the appropriate course of action. Again, this document wasn't in the record. The district court didn't have a full opportunity to explain himself. In any event, I think the Second Circuit's decision in Lowerson... Well, you got the Sellers case. Right, Sellers. You got the majority in the Sellers on your side. That's correct. And I think if the court's interested in more recent discussions of this issue than 1977... You know, Chief Justice Rehnquist always used to be able to give you the exact citation out of cases from the late 19th century. His recall, the Chief Justice's recall was legendary. So I don't think you need to apologize. If it's a precedent, it's a precedent. Well, we're happy to rely on Sellers. I think Lowerson is also instructive here. The Lowerson case cites a judge-friendly opinion, a judge-friendly comment, noting that when a judge owns a few shares of a large corporation, that such an interest is not merely unsubstantial, but nonexistent. And we submit that that was the case there. Did you make judicial notice of the fact that Wells Fargo is a large corporation? Yes, Fortune 500. All three of the victim banks are Fortune 500 companies with valuations in the many billions of dollars. Do you have anything further? No, we asked the court to affirm. Bob, do you have anything further? Thank you. Mr. Young, I'm going to give you some rebuttal time, if you wish. No, Your Honor, unless the court has any questions. I don't think so. We have no questions. You're court-appointed, and I do appreciate your efforts on behalf of your client. Thank you very much. Thank you, Your Honor. We will adjourn court, and then we will come down and reconvene.
judges: J. Harvie Wilkinson III, Robert B. King, G. Steven Agee